## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Gordon Stevens, individually and as the representative of a class of similarly situated persons, and on behalf of the SEI Capital Accumulation Plan, <br><br> Plaintiff, <br><br> v. <br><br> SEI Investments Company, SEI Investments Management Corporation, SEI Capital Accumulation Plan Design Committee, SEI Capital Accumulation Plan Investment Committee, SEI Capital Accumulation Plan Administration Committee, and John Does 1-30, <br><br> Defendants. | **Case No. 2:18-cv-04205-NIQA** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

I.      PROCEDURAL HISTORY ............................................................................................ 1

      A.  Pleadings ..................................................................................................... 1

      B.  Discovery and Mediation ............................................................................ 2

II.     OVERVIEW OF THE SETTLEMENT TERMS ................................................................ 2

      A.   The Settlement Class ................................................................................... 2

      B.   Monetary Relief ........................................................................................... 3

      C.   Prospective Relief ....................................................................................... 4

      D.   Release of Claims ........................................................................................ 4

III.    PRELIMINARY APPROVAL OF SETTLEMENT .......................................................... 5

IV.    CLASS NOTICE AND REACTION TO SETTLEMENT ................................................. 5

V.     REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ...................................... 7

ARGUMENT ............................................................................................................................ 8

I.      STANDARD OF REVIEW ............................................................................................ 8

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................................. 9

      A.   The Settlement Is Entitled to a Presumption of Fairness ........................... 9

      B.   The Settlement Provides Fair and Reasonable Relief to Class Members ................ 11

      C.   The Settlement's Distribution Method Is Reasonable and Treats Class Members

         Equitably ................................................................................................... 13

      D.   Continued Litigation Would Have Entailed Significant Risk ................... 14

      E.   ERISA Class Cases Are Complex, Expensive, and Often Lengthy ........... 15

F.      The Independent Fiduciary and Class Members Support the Settlement ................17

G.      The Ability of SEI to Withstand a Greater Judgment Is Not a Reason to Withhold

Approval of the Settlement in Light of the Other Factors .......................................18

III.    THE CLASS NOTICE WAS REASONABLE..............................................................................19

IV.     THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL .....................................20

CONCLUSION ........................................................................................................................21

## TABLE OF AUTHORITIES

### Cases

*Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir. 2013) ............................................15, 17

*Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ..........................16

*Andrus v. NY Life Ins. Co.*, No. 1:16-cv-05698, ECF No. 84 (S.D.N.Y. June 15, 2017) ..............13

*Becker v. Bank of New York Mellon Tr. Co., N.A.*, 2018 WL 6727820

      (E.D. Pa. Dec. 21, 2018) ..........................................................................................................9

*Brotherston v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017)............14, 15, 16

*Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. Oct. 29, 2018) ................................14, 16

*Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985)....................................................................12

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)...........................................................................8, 9

*Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .....................8

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)....................................................20

*In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199 (E.D. Pa. 2014) ..........................18

*In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768

      (3d Cir. 1995)......................................................................................................................8, 9

*In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ....................................10

*In re Lockheed Martin Corp.*, 412 Fed. Appx. 892 (7th Cir. 2011) ..............................................17

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010)........................................................16

*In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)...................17

*In re Natl. Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) .........9

*In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421 (W.D. Pa. 2006)................................10, 11

*In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012)................................18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)...9

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ...........................................11

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3rd Cir. 2009) ...................................21

*In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451

    (D.N.J. May 31, 2012) ...........................................................................................15

*Johnson v. Fujitsu Tech. & Bus. of America, Inc.*, 2018 WL 2183253

    (N.D. Cal. May 11, 2018) ..............................................................................12, 13

*Kemp-DeLisser v. Saint Francis Hospital and Medical Center*, 2016 WL 6542707

    (D. Conn. Nov. 3, 2016) ........................................................................................15

*Klingensmith v. Max & Erma's Restaurants, Inc.*, 2007 WL 3118505

    (W.D. Pa. Oct. 23, 2007) .......................................................................................10

*Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879 (D. Minn. July 13, 2015)..........................15

*Lachance v. Harrington*, 965 F. Supp. 630 (E.D. Pa. 1997) ...................................................10, 12

*Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of*

    *Am.--UAW*, 2011 WL 4402136 (E.D. Pa. Sept. 22, 2011)..................................19

*Main v. American Airlines, Inc.*, No. 4:16-cv-00473, ECF No. 133

    (N.D. Tex. Feb. 7, 2018) .......................................................................................13

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015)......................................7, 18

*Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007) ...........................................13

*Mirakay v. Dakota Growers Pasta Co.*, 2014 WL 5358987 (D.N.J. Oct. 20, 2014)....................19

*Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803

    (S.D.N.Y. Sept. 5, 2017)........................................................................................11

*Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 1:15-cv-09936, ECF No. 347

(S.D.N.Y. March 1, 2019) ................................................................................................13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................19

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) ...............................18

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................................16

*Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) ...........................15

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .........................................16

*Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549 (E.D. Pa. 2005) ...............................14

*Sutton v. Med. Serv. Ass'n of Penn.*, 1994 WL 246166 (E.D. Pa. June 8, 1994) ..........17

*Thomas v. NCO Fin. Sys., Inc.*, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ...............12

*Tibble v. Edison*, 135 S. Ct. 1823 (2015) .....................................................................17

*Tibble v. Edison Int'l*, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ...........................16

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) .......................................................17

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) .......................................................17

*Tussey v. ABB Inc.,* 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ...............................16

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185

(C.D. Cal. July 30, 2018) .......................................................................................12, 13

*Velazquez v. Massachusetts Financial Services Co.*, No. 1:17-cv-11249, ECF No. 96

(D. Mass. June 25, 2019) ............................................................................................13

*Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019) ......14, 15

## Rules and Statutes

Prohibited Transaction Exemption 77-3, 42 Fed. Reg. 18,734-35 (Apr. 8, 1977) ........17

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended,

75 Fed. Reg. 33830 ......................................................................................................7

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................................19

Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes to 2018 Amendments ...................................8

Fed. R. Civ. P. 23(e)(2)........................................................................................................................8

**<u>Other Authorities</u>**

4 NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002).....................................................................8

Restatement (Third) of Trusts, § 100 cmt. b(1) (2012)....................................................................14

## INTRODUCTION

On July 31, 2019, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiff's claims against Defendants under the Employee Retirement Income Security Act ("ERISA") relating to the SEI Capital Accumulation Plan ("Plan").[1] *ECF No. 40*. The Court found on a preliminary basis that the terms of the Settlement are "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class," and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id. ¶¶ 1.D, 5*. Since that time, an Independent Fiduciary has confirmed that the Settlement terms are fair and reasonable, *see Declaration of Kai Richter in Support of Motion for Final Approval ("Third Richter Decl."), Ex. 1*, and no class member has objected to the Settlement.[2] Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement. Defendants do not oppose this motion as parties to the Settlement.

## BACKGROUND

### I.   PROCEDURAL HISTORY

#### A.   Pleadings

On September 28, 2018, Plaintiff Gordon Stevens, a former participant in the Plan, filed a Class Action Complaint against Defendants, asserting claims for breach of fiduciary duty under ERISA. *See ECF No. 1*. In summary, Plaintiff alleged that the Plan's fiduciaries retained SEI-affiliated investments in the Plan that a prudent and unbiased fiduciary would not have retained. *See id. ¶¶ 6-10*.

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the Parties' Settlement Agreement, which appears on the docket at ECF No. 39-03.

[2] One objection was received challenging only the attorneys' fees requested by Plaintiff's counsel. *See Third Richter Decl. ¶ 4 & Ex. 2*. The Independent Fiduciary found the requested attorneys' fees reasonable "[i]n light of the work performed, the result achieved, the litigation risk assumed by Plaintiff's counsel." *Third Richter Decl. Ex. 1 at 7*.

On December 10, 2018, Defendants filed an Answer to Plaintiff's Complaint, denying Plaintiff's allegations of wrongdoing and asserting certain affirmative defenses. *ECF No. 28.* During the their initial conference pursuant to Federal Rule of Civil Procedure 26(f), the Parties agreed to engage in early mediation. The Court subsequently approved a joint motion to defer entry of a scheduling order until after mediation, and ordered Parties to notify the Court of a resolution or provide a proposed scheduling order by May 14, 2019. *ECF No. 35.*

**B.     Discovery and Mediation**

In preparation for mediation, the Parties engaged in focused, thorough discovery, which included the production of more than 6,800 pages of documents by Defendants. *Declaration of Kai Richter in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("First Richter Decl."), ECF No. 39-2, ¶ 13.* Plaintiff's counsel also retained and consulted with an expert. *Id. ¶ 14.* In addition, the Parties exchanged written mediation statements outlining their factual and legal positions in detail. *Id. ¶ 15.*

On May 7, 2019, the Parties engaged in a full-day mediation before Hunter R. Hughes III. *Id.* Mr. Hughes is an experienced and well-respected mediator who has successfully resolved numerous high-stakes class actions including those involving ERISA breach of fiduciary duty claims. *Id..* Although a settlement was not reached during the mediation, the Parties agreed to continue negotiations through Mr. Hughes. *Id. ¶ 16.* With the assistance of Mr. Hughes (who made a mediator's proposal), the Parties reached a settlement-in-principle on May 14, 2019. *Id.* The terms of the Parties' settlement are memorialized in the Settlement Agreement.

**II.    OVERVIEW OF THE SETTLEMENT TERMS**

**A.     The Settlement Class**

The Settlement Agreement applies to the following Settlement Class:

> All persons who participated in the Plan, including all Beneficiaries and Alternate Payees, at any time during the Class Period, excluding persons who were members during the Class Period of the SEI Capital Accumulation Plan Investment Committee.

*Settlement Agreement, ECF No. 39-03, ¶ 2.45 ("Settlement Agreement").* The Class Period runs from September 27, 2012 through (and including) June 30, 2019. *Id. ¶ 2.13.* Based on information provided by Defendants, there are approximately 5,734 class members. *See Declaration of Caroline Barazesh ("Barazesh Decl."), ¶ 7.*

### B.    Monetary Relief

Under the Settlement, SEI or its insurers will contribute a Gross Settlement Amount of $6.8 million to a common settlement fund (the "Settlement Fund"). *Id. ¶¶ 2.30, 5.4-5.5.*[3] In the event that the Settlement receives final court approval and becomes effective, the Settlement Fund will be distributed to Class Members within 120 days after the Settlement Effective Date, pursuant to the Plan of Allocation in the Settlement Agreement (net of deductions for any approved payments of attorneys' fees and costs, administrative expenses, and Class Representative service awards). *Id. ¶¶ 2.34, 6.1.*[4]

The Net Settlement Amount will be allocated among eligible Class Members in proportion to their average quarterly account balances. *Id. ¶ 6.4.* Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Former Participants are required to submit a claim form, which allows them to receive a direct payment by check, or elect to have their distribution rolled-over into an individual retirement account or

---

[3] Half of the Gross Settlement Amount has already been deposited into the Settlement Fund. *See Settlement Agreement ¶ 5.4.* The remainder will be deposited within 20 business days of the Settlement Effective Date. *Id. ¶ 5.5.*
[4] Plaintiff filed a separate Motion for Approval of Attorneys' Fees, Expenses and Service Awards on October 21, 2019. *ECF No. 41.* Class Counsel will receive any approved distributions at the same time as the Settlement Class. *Settlement Agreement ¶ 5.9.*

other eligible employer plan. *Id.* ¶ *6.6.*[5] Under no circumstances will any monies revert to SEI. Any checks that are uncashed will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan. *Id.* ¶¶ *6.11, 6.12.*

### C.    Prospective Relief

The Settlement also provides that the following procedures shall apply to the management of the Plan on a prospective basis for a period of no less than three years beginning no later than the Settlement Effective Date:

a) Defendants shall retain the services of an unaffiliated investment consultant to provide an evaluation of the design of the Plan's investment lineup and to review the Plan's investment policy statement.

b) SEI shall continue to pay all recordkeeping fees associated with the Plan that it is currently paying and that would otherwise be payable from Plan assets.

c) SEI shall ensure that all of the Plan's Investment Committee members will participate in a training session on ERISA's fiduciary duties.

*Id.* ¶ *7.1.*

### D.    Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties") from all claims:

**2.40.1**  That were asserted in the Action, or that arise out of, relate to, are based on, or have any connection with, or could have been based on any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences that are, were, or could have been alleged, asserted, or set forth in the Action that arise out of, relate in any way to, are based on, or have any connection with: (1) the overall structure, management, or monitoring of the Plan's investment menu, (2) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's investment options and service providers, (3) fees, costs, or expenses charged to, paid, or reimbursed by the Plan, (4) disclosures or failures to disclose information regarding the Plan's investment options or service providers, (5) the investment options offered to Plan participants, (6) the selection of vendors and providers for

---

[5] The Claim Form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks.

the Plan, (7) the services provided to the Plan or the costs of those services, (8) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties, (9) engaging in self-dealing or prohibited transactions in relation to the investment options available under the Plan or services provided to or for the Plan, and/or (10) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or

      **2.40.2**  That would be barred by res judicata based on entry by the Court of the Final Approval Order; or

      **2.40.3**  That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund pursuant to the Plan of Allocation; or

      **2.40.4**  That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*Id. ¶¶ 2.39, 2.40.* The Independent Fiduciary found that "[t]he terms of the release, including the release of claims by the Plan, are reasonable." *Third Richter Decl. Ex. 1 at 5.*

## III.   PRELIMINARY APPROVAL OF SETTLEMENT

On July 31, 2019, the Court issued an Order granting preliminary approval of the proposed Settlement. *See ECF No. 40*. In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement were "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class." *Id. ¶¶ 1.D.* The Court therefore approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id. ¶ 5.* In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Settlement Notices, and carry out the other duties specified by the Settlement Agreement. *Id. ¶¶ 3, 5.B.*

## IV.   CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the appropriate Settlement Notice (and Former Participant Claim Form, if applicable) to each of the

Class members identified by the Plan's recordkeepers. *Barazesh Decl., ¶¶ 7-10.* This included 4,163 Notices to Current Participants and 1,571 Notices to Former Participants. *Id. ¶¶ 9, 13.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the Class List with the United States Postal Service National Change of Address ("NCOA") Database. *Id. ¶ 8.* In the event that any Settlement Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 9-13.* As a result, the notice program was very effective. Out of 5,734 Settlement Notices that were mailed, only 2.65% were ultimately undeliverable despite these efforts. *Id. ¶ 13.*

In the event that any Class Members desired further information, Analytics established a settlement website at www.CapitalAccumulationPlanSettlement.com. *Id. ¶ 16.* Among other things, the Settlement Website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including the Complaint, Settlement Agreement, Settlement Notices, Former Participant Claim Form, Plaintiff's Motion for Preliminary Approval of Class Action Settlement, the Preliminary Approval Order, and Plaintiff's Motion for Approval of Attorneys' Fees, Expenses, and Service Awards); and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-877-401-0752) as a resource for Class Members seeking information about the Settlement. *Id. ¶ 17.* This telephone number was referenced in the Notices, and also appears on the settlement website. *Id.*

The deadline to submit objections to the Settlement was November 20, 2019. *ECF No. 40 ¶ 7.* Only one objection—challenging Class Counsel's requested attorneys' fees and explicitly declining to object to any terms of the Settlement—has been received. *See Third Richter Decl. ¶ 4 & Ex. 2.*[6]

## V.   REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1 of the Settlement and applicable ERISA regulations,[7] the Settlement was submitted to an independent fiduciary (Fiduciary Counselors) for review following the Court's preliminary approval order. *See Third Richter Decl. Ex. 1.* After reviewing the Settlement and other case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary concluded that: (i) "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, the non-monetary consideration and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone," (ii) "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances," and (iii) "[t]he transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest." *Id.   at 3.* Accordingly, the Independent Fiduciary "determined not to object to any aspect of the Settlement." *Id. at 13.*

---

[6] This objection is discussed in Plaintiff's Supplemental Memorandum in Support of Motion for Approval of Attorneys' Fees, Expenses and Class Representative Service Award.  It has no bearing on the present motion. *See McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 641 (E.D. Pa. 2015) ("The adequacy of the settlement will be considered separately from class counsel's fee request."). Indeed, the Settlement Agreement expressly provides that it is not contingent on approval of Class Counsel's request for attorneys' fees. *See Settlement, ¶ 11.3.*

[7] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

## ARGUMENT

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts are mindful that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also* 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41 (4th ed. 2002).

At the final approval stage, the court must determine whether a settlement is "fair, reasonable, and adequate" using the following criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors are not intended to "displace" the Third Circuit's common law factors, but are meant to "focus the parties [on] the 'core concerns' that motivate the fairness determination." *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes to 2018 Amendments).

8

The Third Circuit has identified nine factors courts should consider in granting final approval of a settlement under Rule 23(e):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *see also In re Natl. Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016). In addition, the court may additional factors where appropriate. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). The Third Circuit's factors "overlap substantially" with the factors listed in Rule 23(e). *Becker v. Bank of New York Mellon Tr. Co., N.A.*, 2018 WL 6727820, at *5 (E.D. Pa. Dec. 21, 2018).

## II. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Settlement Is Entitled to a Presumption of Fairness

"[A]n initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors*, 55 F.3d at 788-86. That is precisely the situation presented here.

First, the Settlement was reached through arm's-length negotiations. The Court's Preliminary Approval Order expressly states that "[t]he proposed settlement resulted from arm' s-length negotiations by experienced and competent counsel overseen by a neutral mediator." *ECF No. 40, ¶ 1.A.* Further, the Independent Fiduciary "found no indication the Settlement is part of any broader agreement between Defendants and the Plan." *Third Richter Decl. Ex. 1 at 10.*

Second, the Settlement was based on "sufficient information to evaluate the merits of settlement in an informed manner." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 190 (E.D. Pa. 2000).[8] The Settlement occurred after Class Counsel conducted a thorough investigation; prepared a detailed Complaint; obtained more than 6,800 pages of documents from Defendants (including a comprehensive set of Investment Committee meeting minutes and materials); retained and consulted with an expert regarding potential damages suffered by the Plan; and exchanged fulsome mediation statements with Defendants and engaged in a full-day mediation with an experienced and well-regarded mediator. *First Richter Decl. ¶¶ 12-15.* These facts are consistent with other early settlements that have been approved in this jurisdiction. *See Klingensmith v. Max & Erma's Restaurants, Inc.*, 2007 WL 3118505, at *4 (W.D. Pa. Oct. 23, 2007) (approving settlement after early mediation because "[a]lthough Plaintiff's factual inquiry was neither exhaustive nor protracted, it was appropriately focused on the question critical to the merits of the case" and the complaint and investigation assured the court that the settlement "was premised on a sound and adequately informed assessment"); *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) (approving a settlement reached prior to class certification, noting that the law supports "early resolution of litigation through settlement"); *In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 430 (W.D. Pa. 2006) (stating that negotiation "at arm's length over several months with the assistance of" a respected mediator "in itself significantly dispels any concern of collusion").

---

[8] As the Court noted in its Preliminary Approval Order, "[t]he Settlement was negotiated only after Class Counsel and Defendants had conducted mediation and Class Counsel received pre-mediation discovery containing pertinent information and documents from Defendants[.]" *ECF No. 40, ¶ 1.B.*

Third, Counsel for Plaintiff and Defendants are knowledgeable and experienced in complex class actions, particularly actions involving allegations of breaches of fiduciary duties under ERISA. *See, e.g.*, *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) ("Plaintiffs' counsel, Nichols Kaster, PLLP . . . are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans"); *First Richter Decl. ¶¶ 18-19 & Ex. C* (outlining qualifications and experience of class counsel).

Finally, as noted above, there were no objections to the terms of the Settlement. *See supra* at 7 & n.6. Thus, the Settlement enjoys a presumption of fairness.

### B.     The Settlement Provides Fair and Reasonable Relief to Class Members

The Settlement provides relief that, as the Independent Fiduciary noted in its Report, "[is] reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Richter Decl. Ex. 1.* On a per-capita basis, the $6.8 million recovery provides approximately $1,200 per Class Member; on a gross basis, it represents approximately 1.3% of Plan assets. *First Richter Decl. ¶ 6.* On both of these measures, the Settlement is reasonable compared to other recent 401(k) settlements. *Id.*

Moreover, the settlement amount also represents a reasonable portion of the damages Plaintiff alleged were caused by Defendants' alleged fiduciary breaches. *Id. ¶ 7.* In advance of mediation, Plaintiff's expert calculated $21.5 million in potential losses associated with Defendants' alleged fiduciary misconduct. *Id.* The $6.8 million recovery represents more than 31% of the total estimated damages. *Id.* This percentage compares favorably to other class action settlements. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re PNC*, 440 F. Supp. at 435-36 (approving a $193 million

settlement in a case worth $1.5 billion in damages (12% of estimated losses) because this "constitute[d] a very reasonable range of settlement when compared to the best possible recovery discounted by the attendant risks of proceeding to trial"); *Urakchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately one-quarter of estimated total plan-wide losses of $47 million); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages.").[9]

As noted above, the Settlement also provides for prospective relief. For a period of at least three years from the Effective Date of the Settlement: (1) Defendants will retain an unaffiliated investment consultant to provide an evaluation of the design of the Plan's investment lineup and to review the Plan's investment policy statement; (2) SEI will continue to pay all recordkeeping fees associated with the Plan that it is currently paying and that would otherwise be payable from Plan assets; and (3) SEI will ensure that Investment Committee members participate in a training session on ERISA's fiduciary duties. *Settlement Agreement ¶ 7.1.* As the Independent Fiduciary noted, this non-monetary relief is "beneficial to participants." *Third Richter Decl. Ex. 1 at 10.* This further supports approval of the Settlement. *See Thomas v. NCO Fin. Sys., Inc.*, 2002 WL 1773035, at *6 (E.D. Pa. July 31, 2002) (citing "meaningful injunctive relief" as a factor in preliminary approval of a settlement).

---

[9] The recovery as a percentage of damages is particularly reasonable given the uncertainties in determining damages in cases such as this. *See Donovan v. Bierwirth*, 754 F.2d 1049, 1058 (2d Cir. 1985) (stating that damages determinations in ERISA breach of fiduciary duties cases are "of necessity somewhat arbitrary"); *Lachance*, 965 F. Supp. at 643 (approving securities class action settlement in part because "the question [of damages] would come down to a battle of the experts—testimony which makes it hazardous to predict how much of a financial recovery the jury would award[]") (citation and internal quotation marks omitted).

### C.    The Settlement's Distribution Method Is Reasonable and Treats Class Members Equitably

The Settlement treats all Class Members equitably and will be delivered through an effective method of distribution. The Net Settlement Amount will be allocated among all eligible Class Members on a *pro rata* basis in proportion to their average quarterly account balances in the Plan during the Class Period. *Settlement Agreement ¶ 6.4.* Current Participants will have their accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Although Former Participants are required to submit a claim form for administrative reasons—to specify a cash payment or rollover election and to provide a current address—they are entitled to the same proportional share of the Settlement. *Id. ¶¶ 6.5, 6.6.* The Independent Fiduciary found that the Settlement's allocation provisions are "reasonable" because "they are cost-effective, put the allocations of current participants in their Plan accounts, and allow others to elect a rollover or receive a direct cash payment." *Third Richter Decl. Ex. 1 at 6.* Similar methods of distribution have been approved in other ERISA class action settlements. *See, e.g.*, *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 478–79 (E.D. Pa. 2007); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 347 at 4 (S.D.N.Y. March 1, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., LP*, No. 8:15-cv-01614, ECF No. 185 at 5 (C.D. Cal. July 30, 2018); *Johnson v. Fujitsu Tech. & Bus. of America, Inc.*, 2018 WL 2183253 (N.D. Cal. May 11, 2018); *Main v. American Airlines, Inc.*, No. 4:16-cv-00473, ECF No. 133 at 8 (N.D. Tex. Feb. 7, 2018); *Andrus v. NY Life Ins. Co.*, No. 1:16-cv-05698, ECF No. 84 (S.D.N.Y. June 15, 2017); *Velazquez v. Massachusetts Financial Services Co.*, No. 1:17-cv-11249, ECF No. 96 (D. Mass. June 25, 2019) (granting preliminary approval).

**D.      Continued Litigation Would Have Entailed Significant Risk**

In the absence of a Settlement, Plaintiff would have faced potential litigation risks. *See Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 552 (E.D. Pa. 2005) ("Absent the settlement, a lengthy and expensive trial and appeal would likely be inevitable, and avoiding these costs benefits all parties."). These risks are highlighted by two recent ERISA 401(k) cases involving proprietary funds that resulted in trial judgments in favor of the defendants. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Brotherston v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017).[10]   The fact that SEI retained its own funds in the Plans does not automatically render it liable for self-dealing under ERISA. *See* Prohibited Transaction Exemption ("PTE") 77-3, 42 Fed. Reg. 18,734-35 (Apr. 8, 1977).  Moreover, Defendants denied that they engaged in any wrongdoing and asserted eleven affirmative defenses in their Answer to the Complaint. *See ECF No. 28*.

Moreover, even if Plaintiff proved a fiduciary breach, difficult loss questions would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (2012) (noting that determination of investment losses in breach of fiduciary duty cases is "difficult"). As the Independent Fiduciary noted in its Report, "proving damages would not be a given" and "[p]laintiffs in other cases have encountered difficulties in establishing losses." *Richter Decl. Ex. 1 at 9.* For example, in a recent case involving New York University's defined contribution plan, the court found that "while there were deficiencies in the [fiduciary] Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have

---

[10] Although the trial court's decision in *Putnam* was vacated in part by the First Circuit, 907 F.3d 17 (1st Cir. 2018), the defendants in *Putnam* have filed a petition for writ of certiorari with the United States Supreme Court, highlighting the ongoing risk and uncertainty associated with that action.

not proven that ... the Plans suffered losses as a result." *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 280 (S.D.N.Y. 2018).  Likewise, the trial court decisions in both *American Century* and *Putnam* resulted in adverse rulings on the issue of loss. *See American Century*, 362 F. Supp. 3d at 710-711 (finding that "Plaintiffs failed to prove a loss to the Plan"); *Putnam*, 2017 WL 2634361, at *12 (finding that plaintiffs "failed to establish a prima facie case of loss," despite making a persuasive showing that the fiduciaries were "no paragon of diligence" and that the defendants had failed to monitor the plan's investments).[11]  Although Plaintiff believes that his damages expert developed a robust loss model, it is uncertain how the Court would have ruled on the issue of loss in the event that it found a breach. This uncertainty as to loss further weighs in favor of settlement approval. *See In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012) (stating that "ERISA class actions . . . involve a complex and rapidly evolving area of law" and that "Plaintiff faced significant risks in establishing liability and damages if the matter proceeded to trial"); *Kemp-DeLisser v. Saint Francis Hospital and Medical Center*, 2016 WL 6542707, at *9 (D. Conn. Nov. 3, 2016) (finding complex damages analysis weighed in favor of ERISA class settlement).

### E.    ERISA Class Cases Are Complex, Expensive, and Often Lengthy

Aside from these risks, continuing the litigation would have resulted in complex and costly additional proceedings, which would have significantly delayed any relief to Class Members, and might have resulted in no relief at all. These considerations also support approval of the Settlement.

It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at

---

[11] The loss ruling in *Putnam* was subsequently vacated by the First Circuit and is the subject of the defendants' pending petition for writ of certiorari.

*2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). In fact, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *4 (noting that the case had originally been filed on "September 11, 2006"); *First Richter Decl. ¶ 10* (noting that "the *Boeing* litigation lasted nearly a decade before it was settled").

The *Putnam* case, which involved similar allegations regarding proprietary funds in Putnam's 401(k) plan, is an excellent case in point. In that case, the plaintiffs suffered an adverse judgment at trial, even though the trial court found that the plan's fiduciaries were "no paragon of diligence." *Putnam,* 2017 WL 2634361, at *12. The plaintiffs then filed an appeal with the First Circuit, won a partial victory on appeal, and are now awaiting the Supreme Court's decision on a petition for certiorari. *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018), *mandate stayed pending pet. for cert.* (1st Cir. Oct. 29, 2018). If certiorari is denied, that case will be remanded for further proceedings before the trial court. Alternatively, if certiorari is granted, the appellate proceedings will continue. These twists and turns highlight the long and difficult road faced by ERISA plaintiffs.

If Plaintiff prevailed at trial in this case, Defendants "would undoubtedly have appealed" any adverse ruling against them. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (stating in an ERISA case

that the risks of litigation on appeal "strongly favor[] settlement"). Moreover, any appeal to the Third Circuit might not have ended there, and could have resulted in a remand for further trial court proceedings (as the First Circuit ordered in *Putnam*, and as other circuit courts have ordered in numerous ERISA cases – sometimes multiple times),[12] or further appellate proceedings before the Supreme Court (as happened in *Tibble v. Edison*, 135 S. Ct. 1823 (2015), and as yet may happen in *Putnam*).

At a minimum, the time and expense required to achieve and preserve a victory would have been significant. One of the chief benefits of the Settlement is that it avoids that delay and expense. *See In re Gen. Motors*, 55 F.3d at 784. This further favors approval of the Settlement. *See Sutton v. Med. Serv. Ass'n of Penn.*, 1994 WL 246166, at *4 (E.D. Pa. June 8, 1994) ("Settlement guarantees that the class will begin realizing these benefits soon, without the delay, expense and uncertain results of trial and appeals"); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *3 (E.D.N.Y. Aug. 7, 1998) ("[C]ontinued litigation would require significant amounts of time on the part of the litigants, with accompanying expense . . . . Accordingly, the complexity of this case as well as the probable duration and expense of further litigation favor approval of the proposed settlement.").

### F.    The Independent Fiduciary and Class Members Support the Settlement

The positive responses from the Independent Fiduciary and the Settlement Class also support the Settlement. After completing the review required by Paragraph 3.1 of the Settlement

---

[12] *See, e.g., Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958-61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses"); *In re Lockheed Martin Corp.*, 412 Fed. Appx. 892, 893 (7th Cir. 2011) (remanding for further proceedings on issue of class certification); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir. 2013) (remanding class certification issue a second time).

and applicable law (*see supra* at n.7), the Independent Fiduciary approved "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery" and found them to be reasonable. *See Third Richter Decl., Ex. 1 at 8.*  Moreover, the named Class Representative previously submitted a declaration in support of the Settlement, *see ECF No. 39-07*, and there have been no objections to the terms of the Settlement from any Class Member.[13] *See supra* at 6. "[I]t is generally appropriate to assume that silence constitutes tacit consent to the agreement in the class settlement context." *In re Processed Egg Prod. Antitrust Litig*., 284 F.R.D. 249, 269 (E.D. Pa. 2012) (citation and internal quotation marks omitted); *see also McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 641 (E.D. Pa. 2015) ("[C]ourts routinely infer support for a settlement from the absence of a large number of objectors."). Thus, the lack of objections to the Settlement terms further supports the reasonableness of the settlement.

### G.   The Ability of SEI to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors

Finally, although SEI has considerable assets, this "does not mean that it is obligated to pay any more than it has agreed to pay into the settlement fund based on the theories of liability that existed when the parties reached their agreement on the size of the settlement fund." *In re CertainTeed Fiber Cement Siding Litig*., 303 F.R.D. 199, 218 (E.D. Pa. 2014). Because the other factors weigh heavily in favor of the Settlement, it should be approved notwithstanding the financial wherewithal of SEI. *See McDonough*, 80 F. Supp. 3d at 645 (stating that district courts within the Third Circuit "regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts") (citations omitted); *Reibstein v. Rite Aid Corp.*, 761 F.

---

[13] The Settlement Notices that were approved by the Court disclosed the terms of the Settlement. *See Barazesh Decl. Exs. 1 & 2.*

Supp. 2d 241, 255 (E.D. Pa. 2011) (finding this factor "neutral" because "Defendants' apparent ability to withstand a greater judgment today is tempered by the always present possibility that Defendants' financial health may change").

## III.   THE CLASS NOTICE WAS REASONABLE

Finally, the class notice program in this case also was reasonable and satisfied the requirements of Rule 23 and Due Process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

The Settlement Administrator provided direct notice of the Settlement to the Settlement Class via U.S. Mail to their last known address. *See supra* at 5-6. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) (stating that notice by U.S. mail satisfies due process); *Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.--UAW*, 2011 WL 4402136, at *4 n.6 (E.D. Pa. Sept. 22, 2011) (granting final approval of ERISA settlement when "[n]otice was distributed by first class mail to the current home addresses" of each class member). The record reflects that 97.35% of Settlement Notices were successfully delivered. *Barazesh Decl. ¶ 13*. This confirms the effectiveness of the notice program in this case. *See Mirakay v. Dakota Growers Pasta Co*., 2014 WL 5358987, at *2, 11 (D.N.J. Oct. 20, 2014) (approving settlement when notice reached 80% of the potential class members).

The content of the Settlement Notices also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event one is required); (6) instructions as to

how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel would seek in Attorneys' Fees and Expenses (as well as the amount of the proposed service award). *See Barazesh Decl. Exs. 1 & 2.* This was fully consistent with the Court's Preliminary Approval Order, *See ECF No. 40, at ¶ 5(A)*, and is more than sufficient to meet the Rule 23 standard. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (notices satisfy Rule 23 if they "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement"). Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## IV.   THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL

In its Order for Preliminary Approval of the Settlement, the Court certified the following Settlement Class:

> All persons who participated in the SEI Capital Accumulation Plan, including all Beneficiaries and Alternate Payees, at any time from September 27, 2012 through June 30, 2019, excluding persons who were members during the Class Period of the SEI Capital Accumulation Plan Investment Committee.

*ECF No. 40.* Nothing has changed since the Court certified the class for preliminary approval. The class is numerous (consisting of over 5,700 Class Members), the settled claims involve common issues relating to the Plan, and Plaintiff is typical of other class members and adequate to

represent the class based on his participation in the Plan and his involvement in the lawsuit.[14] Moreover, breach of fiduciary duty claims under ERISA are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009). Accordingly, the Court should reaffirm its approval of Settlement Class for purposes of final approval.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final approval of the Settlement and enter the accompanying proposed order.

Dated: December 4, 2019                        Respectfully submitted,

**NICHOLS KASTER, PLLP**

By: s/ Kai Richter_____
Paul J. Lukas, MN Bar No. 022084X*
Kai H. Richter, MN Bar No. 0296545*
Brock J. Specht, MN Bar No. 0388343*
Carl F. Engstrom, MN Bar No. 0396298*
Chloe O'Neill, MN Bar No. 0398257  *
* admitted *pro hac vice*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
krichter@nka.com
bspecht@nka.com
cengstrom@nka.com
coneill@nka.com

**WINEBRAKE & SANTILLO, LLC**
Peter Winebrake, Attorney ID No. 80496
R. Andrew Santillo, Attorney ID No. 93041
Mark J. Gottesfeld, Attorney ID No. 307752

---

[14] Plaintiff's participation in the Plan and involvement in the case are addressed in his prior Declaration. *See Declaration of Gordon Stevens in Support of Plaintiff's Motion fort Preliminary Approval of Class Action Settlement, ECF No. 39-7, ¶¶ 1-4.*

Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Phone: (215) 884-2491
pwinebrake@winebrakelaw.com
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

***Attorneys for Plaintiff and the proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2019, a true and correct copy of the foregoing *Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement* was served by CM/ECF to the Parties registered to the Court's CM/ECF system.

Dated:  December 4, 2019                    /s/Kai Richter
                                                           Kai Richter