# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON STEVENS, individually** | : | **CIVIL ACTION** |
| **and as the representative of a class of** | : | |
| **similarly situated person, and on** | : | **NO. 18-4205** |
| **behalf of the SEI Capital** | : | |
| **Accumulation Plan,** | : | |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SEI INVESTMENTS COMPANY,** *et* | : | |
| *al.,* | : | |
| *Defendants* | : | |

FEBRUARY 26, 2020

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion for final approval of class action settlement agreement* and a *motion for approval of attorneys' fees, expenses and class representative service award*, [ECF 41], filed by Plaintiff Gordon Stevens pursuant to Federal Rule of Civil Procedure ("Rule") 23. Previously, this Court granted preliminary approval to the underlying class action settlement agreement (the "Settlement Agreement"). [ECF 40]. A hearing was held on December 18, 2019, at which the Court heard oral argument on Plaintiff's unopposed motion for final approval of the Settlement Agreement. Counsel for all parties appeared. For the reasons stated herein, the motion for final approval of the class action settlement and motion for attorneys' fees and expenses are both granted.

### BACKGROUND

Plaintiff Gordon Stevens, on behalf of himself and all others similarly situated, brought this class action against Defendants SEI Investments Company, SEI Investments Management

Corporation, SEI Capital Accumulation Plan Design Committee, SEI Capital Accumulation Plan Investment Committee, and SEI Capital Accumulation Plan Administration Committee (collectively, "Defendants") asserting claims for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, relating to the SEI Capital Accumulation Plan (the "Plan"). In summary, Plaintiff alleged that the Plan's fiduciaries retained SEI-affiliated investments in the Plan that a prudent and unbiased fiduciary would not have retained. Defendants denied the allegations and asserted various affirmative defenses. During the parties' initial pretrial conference with this Court, the parties agreed to engage in early mediation.

In preparation for the mediation, the parties engaged in focused discovery, which included the production of more than 6,800 pages of documents by Defendants. Plaintiff's counsel also retained and consulted with an expert. In addition, the parties exchanged written mediation statements outlining their factual and legal positions. The parties then engaged in a full-day mediation before Hunter R. Hughes, III, an experienced and well-respected mediator who has successfully resolved numerous high-stakes class actions, including those involving ERISA breach of fiduciary duty claims. Although a settlement was not reached at the initial mediation, the parties continued their settlement discussions through the mediator. With the assistance of the mediator, the parties eventually reached a settlement.

### The Terms of the Settlement

The Settlement, the full terms of which are set forth in the Settlement Agreement, provides substantial economic benefits to the certified class (the "Class"). The Settlement creates a total settlement fund of $6.8 million (the "Settlement Fund"), to be reduced by any amount approved by this Court for attorneys' fees and costs, administrative expenses, and a class

representative service award. Within 120 days after the settlement effective date, the net settlement fund will be distributed to Class Members in proportion to their average quarterly account balances. Current Plan participants ("Current Participants") will have their Plan accounts automatically credited with their share of the Settlement Fund. Former Plan participants ("Former Participants") are required to submit a claim form, which allows them to receive a direct payment by check or elect to have their distribution rolled over into an individual retirement account or other eligible employer plan. Under no circumstances will any monies revert to SEI. Any uncashed checks will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan. The Settlement also provides various prospective relief with respect to the management of the Plan, which will benefit current and future participants. As consideration for these settlement benefits, Defendants will receive a mutual release of all claims between the parties. Notably, an independent fiduciary found that "[t]he terms of the release, including the release of claims by the Plan, are reasonable."

### Preliminary Approval and Class Notice

By Order dated July 31, 2019, this Court granted preliminary approval to the proposed Settlement and provisionally certified the proposed class. Pursuant to this Court's Preliminary Approval Order, Analytics Consulting, LLC ("Analytics") was appointed to serve as the Settlement Administrator. As part of its responsibilities, Analytics sent notice to the relevant governmental officials under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715, *et seq.*, effected publication notice, and sent direct notice to Class Members in accordance with the plan for notice, which this Court found to be the best notice practicable under the circumstances and consistent with the requirements of due process. Notice was mailed to 5,734 Settlement Class

members. Of those notices, only 2.65% were returned as undeliverable. One objection—challenging Class Counsel's requested attorneys' fees and explicitly declining to object to any terms of the settlement—was received.

Pursuant to the terms of the Settlement, the Settlement was submitted to an independent fiduciary for review following the Court's preliminary approval order. After reviewing the Settlement and other case documents, and interviewing counsel for each of the parties, the Independent Fiduciary concluded that: (1) "[t]he Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, the non-monetary consideration and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone," (2) "[t]he terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances," and (3) "[t]he transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest."

**DISCUSSION**

When granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). "The law favors settlement particularly in class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit set forth factors (often called the "*Girsh* factors") that a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). No one factor is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Further, a "court may approve a settlement even if it does not find that each of [the *Girsh*] factors weighs in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thorough going analysis of settlement terms." *See also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). The *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
> (2) the existence and probable outcome of claims by other classes and subclasses;
> (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
> (4) whether class or subclass members are accorded the right to opt-out of the settlement;
> (5) whether any provisions for attorneys' fees are reasonable; and
> (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350. Only the *Prudential* factors relevant to the litigation in question need be addressed. *In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and the relevant *Prudential* factors in its review of the proposed class action settlement.

### *Girsh* Factors

#### *1. The complexity, expense, and likely duration of the litigation*

It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA 401(k) cases are "particularly complex"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). Needless to say, had the Settlement not been reached, this matter would likely have proceeded to trial on the issues of liability and determination of damages. The continued prosecution of Plaintiff's claims against Defendants would have required significant additional expense to the Class and a substantial

delay before any potential recovery. Though at the time the parties reached the Settlement, the parties had exchanged more than 6,800 pages of documents and participated in a mediation, much work remained, including fact depositions, expert discovery, and motion practices with respect to class certification and summary judgment. Further, no matter the outcome of a trial, it is likely that one or all of the parties would have appealed, leading to further litigation costs and delay in any realized recovery. Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties and weighs in favor of approving the settlement. *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### 2. The reaction of the class to the settlement

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence that the proposed settlement is fair and adequate. *Serrano v. Sterling Testing Sys., Inc*., 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, Defendants identified more than 5,734 individuals who meet the Class definition. Those individuals identified as potential Class members were mailed notices and Class forms. As of the date of the final approval hearing, no Class Member had objected to the substantive terms of the proposed settlement (other than an objection to the proposed attorneys' fee award, discussed below). This factor is persuasive evidence of the fairness and adequacy of the

proposed settlement, and weighs in favor of a final approval.  *See In re Cendant*, 264 F.3d at 234-35.

### 3. The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Cendant*, 264 F.3d at 235.  When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery."  *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000).  Settlements reached following discovery "are more likely to reflect the true value of the claim."  *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated from its commencement.  Prior to reaching a settlement, Class Counsel conducted a thorough investigation, prepared a detailed complaint, obtained more than 6,800 pages of documents from Defendants, retained and consulted with an expert regarding potential damages suffered by the Plan, exchanged fulsome mediation statements with Defendants, and engaged in a full-day mediation with an experienced and well-regarded mediator.  As a result of these pre-settlement efforts, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case.  Consequently, this Court finds that this factor weighs in favor of approval.

### 4. The risks of establishing liability

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to the plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319. This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *Wallace v. Powell*, 288 F.R.D. 347, 369 (M.D. Pa. 2012) (quoting *Prudential II*, 148 F.3d at 319).

In this case, the outcome of this matter with respect to liability is far from certain. Defendants have denied any liability throughout this litigation. The proposed settlement avoids the risk that Defendants be found not liable. Thus, this Court finds that this factor weighs in favor of approval.

### 5. The risks of establishing damages

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential II*, 148 F.3d at 319. In *Warfarin Sodium I*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in

*In re Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is likely true here. Accordingly, this factor weighs in favor of approval.

### 6. *The risks of maintaining the class action through trial*

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. As noted above, this action has been vigorously litigated by both sides from the outset. As such, it is likely that the issue of class certification would have been the subject of vigorous dispute. Further, even if class certification were granted in this matter, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Skeen v. BMW of N. Am., Ltd. Liab. Co.*, 2016 WL 4033969, at *15 (D. N.J. July 26, 2016). Accordingly, this factor weighs in favor of approval.

### 7. *The ability of defendants to withstand a greater judgment*

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. Though the parties acknowledge that Defendants have the ability to withstand a judgment greater than the settlement amount, where the defendants' ability to pay greatly exceeds the potential liability, this factor is generally neutral. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010). Because this is the case here, this factor is neutral.

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.  *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  Here, the Class is receiving a significant settlement amount that offers real economic benefits to Class Members.  On a per-capita basis, the $6.8 million recovery provides approximately $1,200 per Class Member.  On a gross basis, the recovery represents approximately 1.3% of Plan assets.  In addition, the $6.8 million recovery represents more than 31% of the maximum proposed loss.  This percentage compares favorably to other class action settlements.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re PNC*, 440 F. Supp. At 435-36 (approving settlement amount that represented 12% of estimated losses because it "constitute[d] a very reasonable range of settlement when compared to the best possible recovery discounted by the attendant risks of proceeding to trial").  The Settlement also provides prospective relief that is beneficial to all existing and future Plan participants.  As previously noted, the expense of a trial and use of the parties' resources would have been substantial, especially in conjunction with the post-trial motions and appeals that

would have likely followed a trial on the merits. Thus, a settlement is advantageous to all parties. Therefore, these factors weigh in favor of approval.

### Relevant *Prudential* Factors

#### 1. *Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a relatively mature point in the proceedings. As discussed above, there has been discovery on the merits and Class Counsel is aware of the complexity and risk inherent in a trial on the merits. In addition, the parties participated in a meaningful and successful private mediation. As such, the litigants were in a position to fully evaluate the strengths, weaknesses, and merits of their case. The advanced development of the record weighs in favor of approval. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").

#### 2. *Results achieved by settlement for individual class members versus the results achieved—or likely to be achieved—for other claimants*

This factor weighs in favor of approval since no class members opted out and most Settlement Class Members will receive Settlement benefits automatically without having to take any action, while others will receive allocations after their submission of a claim form.

#### 3. *Whether class or subclass members are afforded the right to opt out of the settlement*

Pursuant to this Court's Order of July 31, 2019, a class was preliminarily certified pursuant to Federal Rule of Civil Procedure 23(b)(1). As such, Class Members were not given the opportunity to opt out. As part of the Class notice process approved by this Court, however, Settlement Class Members were provided robust notice and the opportunity to file objections to the Settlement. No members filed any objections to the substantive terms of the Settlement.

*4. Whether any provisions for attorneys' fees are reasonable*

As part of the Class notice process approved by this Court, Class members were advised that Plaintiff would seek an award of attorneys' fees of no more than one-third of the settlement amount. As discussed in greater detail, several Class Members have objected to such an award. For the reasons discussed in greater detail below, the attorneys' fees and expenses sought and agreed to in this case are reasonable. Thus, this factor weighs in favor of approval.

*5. Whether the procedure for processing individual claims under*
*the class action settlement is fair and reasonable*

The claims processing procedures put in place by the Settlement are fair and reasonable. Indeed, Settlement Class Members who are Current Participants in the Plan will automatically receive allocations without the need to fill out and submit claim forms. Class members who are Former Participants in the Plan will receive allocations following submission of claim forms. This factor supports approval of the Settlement.

In summary, in light of the presumption of fairness that attaches to the Settlement, *see In re Warfarin*, 391 F.3d at 539, and upon consideration of each of the *Girsh* factors and the relevant *Prudential* factors, this Court finds that the proposed class action settlement is fair and reasonable.

**Class Certification**

As noted, by Order dated July 31, 2019, this Court provisionally certified the following proposed class:

> All persons who participated in the SEI Capital Accumulation Plan, including all Beneficiaries and Alternate Payees, at any time from September 27, 2012 through June 30, 2019, excluding persons who were members during the Class Period of the SEI Capital Accumulation Plan Investment Committee.

Although this Court previously certified the Class, it must again determine whether class certification is appropriate under Rule 23. *In re Prudential*, 148 F.3d at 308.

A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465 (2013); *see also Marcus v. BMW of North America*, 687 F.3d 583, 590 (3d Cir. 2012). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc.*, 568 U.S. at 465-66 (quoting *Wal-Mart*, 564 U.S. at 351). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*. "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

To satisfy the Rule 23(a) requirements:

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus*, 687 F.3d at 590-91 (citations omitted).

Here, Plaintiff seeks certification of the proposed class, as provisionally certified, pursuant to Rule 23(b)(1). This Rule permits certification when the court finds that "prosecuting

separate actions by . . . individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

*Rule 23(a) Requirements*

*1. Numerosity*

Under Rule 23(a)(1), the court must determine whether the potential class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members . . . in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes*, 725 F.3d at 357. "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Id.*

Here, the Settlement Class includes more than 5,000 Settlement Class Members. Given the number and likely geographic distribution of the Settlement Class Members, joinder of all Settlement Class Members would be impracticable. Thus, the proposed Settlement Class satisfies Rule 23's numerosity requirement for settlement purposes. *Liberty Lincoln Mercury Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993).

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality."  Fed. R. Civ. P. 23(a)(2).  Under the Rule, commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart*, 564 U.S. at 350.  It "does not require identical claims or facts among class member[s]."  *Marcus*, 687 F.3d at 597 (citations omitted).  "For purposes of Rule 23(a)(2), even a single common question will do."  *Id*.  Claims common to the entire class "must depend on a common contention . . . [that is] of such a nature that it is capable of classwide resolution . . . [and] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 131 S. Ct. at 2551.

Under Rule 23(a)(3), a court must also determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are closely related and often merge.  *Marcus*, 687 F.3d at 597.  Typicality, however, "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'"  *Id*. at 598.  "If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."  *Id*.

Typicality ensures that the putative class members' and the representative's interests "are aligned 'so that the latter will work to benefit the entire class through the pursuit of [his or her] own goals.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citations omitted).  Typicality is met "when the named plaintiffs and the proposed class

members 'challenge [] the same unlawful conduct." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). Complete "factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

Here, a single overarching common question—whether Defendants' Administrative Fee practice related to in-network services provided through ASH violated ERISA—cuts across every claim of every Settlement Class Member. *Rodriquez v. Nat'l City Bank*, 726 F.3d 372, 832 (3d Cir. 2013) ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant."). In addition, Plaintiff asserts the same ERISA claim, under the same legal theories, for the same wrongful conduct, as the other Settlement Class Members. As such Rule 23(a)(2) and (3)'s requirements of common question of law or fact and typicality are satisfied.

### 4. Adequacy

Under Rule 23(a)(4), a court must determine whether the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet the adequacy requirement, a finding must be made that (1) plaintiff's interests do not "conflict with those of the class" and (2) the proposed class counsel are "capable of representing the class." *Newton*, 259 F.3d at 185. The Third Circuit has "recognized that the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class," *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012), and "not proof of vigorous pursuit of the claim." *In re Cmty. Bank of N. Virginia*,

418 F.3d 277, 307 (3d Cir. 2005). This requirement serves "to ensure that the putative named plaintiff has the incentive to represent the claims of the class vigorously." *Dewey*, 681 F.3d at 184.

Here, there is no conflict between the proposed Class Representative and the Class because, as with all members of the Class, Plaintiff seeks compensation for the same claims from the same Defendants. Plaintiff has no interests that are antagonistic to or in conflict with the Class he seeks to represent and his alleged injuries are identical to those suffered by Settlement Class Members. In addition, Class Counsel have substantial experience prosecuting large-scale class actions, including ERISA class actions involving breach of fiduciary duty claims. Accordingly, both prongs of the adequacy inquiry are met.

*Rule 23(b)(1) Requirements*

Having found that Plaintiff has satisfied each of the Rule 23(a) prerequisites, this Court must determine pursuant to Rule 23(b)(1) whether "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). This is clearly the case here where Plaintiff's claims are premised on his allegation that the Plan's fiduciaries retained SEI-affiliated investments in the Plan that a prudent and unbiased fiduciary would not have retained. Plaintiff's evidence regarding Defendants' conduct will significantly impact the claims of other Plan participants. Indeed, breach of fiduciary duty claims under ERISA—like Plaintiff's claims here—are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).

After carefully concluding the requisite vigorous analysis of the factors in Rules 23(a) and (b), this Court finds that the requirements of Rule 23 are met and that certification of the proposed class is proper.

### Request for Attorneys' Fees and Expenses

As compensation for their legal services and efforts, Class Counsel have requested that this Court approve the portion of the settlement that provides for reimbursement of attorneys' fees in an amount equal to one-third of the total settlement amount, or $2,266,666.00, litigation expenses in the amount of $17,734.97, and settlement administration expenses in the amount of $42,436.00. This amount was contemplated and agreed to in the Settlement Agreement and disclosed to Class Members. The notice provided to potential Class Members expressly informed them that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the total settlement amount, reimbursement of costs and administrative expenses, and a $10,000.00 service award for the Class Representative in recognition of his services as class representative. To date, no Class Member has objected to the substantive terms of the Settlement. However, one member objected to the attorneys' fee award, an objection which includes the signatures of seventy-seven (77) other members joining the objection. In support of their request for fees and reimbursement of costs and expenses, counsel rely upon two declarations of counsel summarizing their time and the expenses incurred on behalf of the Class. (*See* Decls. of Kai Richter and R. Andrew Santillo).

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "[A] thorough judicial review of fee applications is required in all class action settlements. *Gen. Motors*, 55 F.3d at 819. Awarding fees is within the discretion of the court, so long as the court

employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001).

### *Attorneys' Fees*

There are two methods of calculating attorneys' fees in class actions—the percentage-of-recovery method and the lodestar method. *In re Prudential*, 148 F.3d at 332-33. The percentage-of-recovery approach "applies a certain percentage to the settlement fund," while the lodestar method "multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *Sullivan v. DB Inv. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). The percentage-of-recovery approach is more appropriate where, as here, there is a common fund. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (finding that the percentage method is "generally favored" in common fund cases because "it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."); *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee awards in common fund cases . . . is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check.").

In determining what constitutes a reasonable award under the percentage-of-recovery approach, the Third Circuit has directed district courts to consider the ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (the "*Gunter/Prudential* factors"); *to wit*:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the

risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

*Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 336-40; *Diet Drugs*, 582 F.3d at 541. Although district courts should "engage in robust assessments of the [*Gunter/Prudential* factors] when evaluating a fee request," these factors are not exhaustive and should not be applied in a formulaic way. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301-02 (3d Cir. 2005). This Court will apply each factor to determine the reasonableness of the attorneys' fees request.

### 1. The size of the fund created and the number of persons benefitted

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)). Here, the parties negotiated a settlement with a common fund of $6.8 million that confers a benefit upon 5,734 Settlement Class Members. Even after deduction of the requested attorneys' fees and expenses, the $6.8 million fund is large enough to provide approximately $1,200.00 per Class Member. Similar recoveries have been described as "excellent" or "substantial" in other ERISA cases in this District. *See, e.g., Huffman v Prudential Ins. Co. of America*, 2019 WL 1499475, at *6 (E.D. Pa. Apr. 5, 2019) (finding around $1,000.00 per class member "an excellent result" in ERISA class action); *In re Schering-Plough Corp.*, 2012 WL 1964451, at *6 (finding around $900 per class member to be a "substantial" benefit in ERISA case). The Settlement also confers a non-monetary benefit upon

those Settlement Class Members who remain in the Plan because it requires Defendants to provide (1) independent review of the design of Defendants' investment lineup and investment policy statement; (2) a guarantee that SEI will continue to pay recordkeeping fees that otherwise would be payable from Plan assets; and (3) fiduciary training for all members of the Plan's Investment Committee. This factor strongly supports approval of the requested fee.

## 2. *The presence or absence of substantial objections by members of the class*

*Gunter* advises that a court should consider "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." *Gunter*, 223 F.3d at 195 n.1. More than 5,700 Class Notices were sent to Settlement Class Members notifying them that Defendants had agreed to pay the requested attorneys' fees, expenses, and class representative service award. No objections to the substantive terms of the Settlement were filed. However, one Class Member, Ms. Laura L. Salminen, filed an objection to the requested attorneys' fee award, which included the signatures of seventy-seven (77) other Class Members.

Ms. Salminen's objection primarily challenges the proposed method of determining Class Counsel's attorneys' fees. Ms. Salminen advocates for a modified hours-billed or lodestar method. As stated above, percentage-of-recovery is generally the customary and favored method for determining an attorneys' fee award in ERISA class action settlements resulting in common fund settlements. In making her objection, Ms. Salminen ignores the significant risks undertaken by counsel when they undertake representation of ERISA class actions on a contingency basis and the Third Circuit's long-favored percentage-of-recovery method for calculating attorneys' fees in common fund cases such as this. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). Further, Ms. Salminen's arguments that the

Court should not take ERISA-specific considerations into account, including the complexity, risk of non-payment, and amount routinely awarded in similar ERISA cases, are directly contrary to law. Indeed, all three considerations are factors that courts in this Circuit consider in approving percentage-of-recovery attorneys' fees in a common fund case. *See In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009). While Ms. Salminen's objection is noted, this Court finds that it carries little weight when balanced with the other factors.

### 3. The skill and efficiency of the attorneys involved

Class Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *In re Viropharma Inc. Secur. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)). Here, Class Counsel have substantial experience prosecuting large-scale class actions, including ERISA class actions like the case *sub judice*. This experience undoubtedly contributed to the favorable outcome negotiated with equally experienced opposing counsel. Therefore, this factor also weighs in favor of approval.

### 4. The complexity, expense, and likely duration of the litigation

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). As noted, the claims in this action have been the subject of hard-fought litigation since its commencement. Notwithstanding the parties' progress in this matter prior to reaching settlement, if this case were to go to trial, it would involve substantial additional discovery and motion practice at great expense to the parties.

Moreover, even if Plaintiff would have recovered a larger judgment at trial on behalf of the Settlement Class Members, their actual recovery would likely be postponed for years. There is also the possibility that Plaintiff would not recover anything. The Settlement Agreement secures a recovery for the Settlement Class now, rather than the "speculative promise of a larger payment years from now." *In re Viropharma Inc.*, 2016 WL 312108, at *16. This factor, therefore, weighs in favor of approval.

### 5. The risk of non-payment

Class Counsel undertook this action on an entirely contingency fee basis. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. 2012); *see also In re Ocean Power Techs, Inc.*, 2016 WL 677218, at *28. Class Counsel has litigated this case without pay from the inception and has shouldered the risk that the litigation would yield little-to-no recovery. Accordingly, the fifth *Gunter/Prudential* factor weighs in favor of approving the attorneys' fees request.

### 6. The amount of time devoted to the case by plaintiff's counsel

The sixth *Gunter/Prudential* factor considers the amount of time Class Counsel devoted to the litigation. *Gunter*, 223 F.3d at 199. Class Counsel estimates that over 700 hours of attorney and other professional and paraprofessional time were expended on this case. These hours are reasonable for a complex class case such as this.[1] Thus, the sixth *Gunter/Prudential* factor weighs in favor of approving the attorneys' fees request.

### 7. The awards in similar cases

While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases

---

[1] The hours expended in this case are further discussed in the lodestar crosscheck below.

generally range from nineteen to forty-five percent of the common fund. *In re Gen. Motors*, 55 F.3d at 822. In complex ERISA cases, courts in this Circuit and others also routinely award attorneys' fees in the amount of one-third of the total settlement fund. *See In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015). Accordingly, this factor weighs in favor of approval.

### 8. *Value of benefits attributable to the efforts of class counsel relative to the efforts of others*

Class Counsel were the only ones investigating the claims at issue in this case, and they alone initiated and actively litigated this federal action. Because Class Counsel were the only attorneys pursuing the claims at issue in this case, this factor weighs in favor of approval.

### 9. *Percentage fee that would have been negotiated*

Class Counsel agreed to litigate this case on a contingency fee basis and successfully negotiated a settlement. Were this case brought on behalf of an individual, the customary contingency fee would likely range between thirty and forty percent of the recovery. *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) ("In private contingency fee cases, attorneys routinely negotiate agreements for between thirty percent and forty percent of the recovery."); *In re Ikon Ofc. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Here, Class Counsel's requested percentage is commensurate with customary percentages in private contingency fee agreements. Thus, this factor supports approval.

### 10. Innovative terms of the settlement

The Settlement Agreement does not contain any innovative terms. This factor is neutral as it neither weighs in favor of, nor against, approval.

### Lodestar Cross-Check

In common fund cases such as this one, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan*, 667 F.3d at 330. The purpose of the cross-check is to ensure that the percentage approach does not result in an "extraordinary" lodestar multiple or a windfall. *See In re Cendant*, 264 F.3d at 285. The Third Circuit has stated that a lodestar cross-check entails an abridged lodestar analysis that requires neither "mathematical precision nor bean counting." *In re Rite Aid*, 396 F.3d at 305. The Court need not receive or review actual billing records when conducting this analysis. *Id*. at 307.

Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar," *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455. A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

"In calculating the second part of the lodestar determination," *i.e.*, the time reasonably expended, a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 434. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

Attached to the Richter and Santillo Declarations, Class Counsel included a summary of the hours worked by the partners, associates, and professional support staff involved in this litigation. These summaries were prepared from contemporaneous, daily time records that are regularly prepared and maintained by the respective firms. Class Counsel and support staff are claiming 717.3 hours for work done at hourly rates ranging from $250 to $875. After reviewing the Attorney Declarations, it appears that Class Counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. These hourly rates are also well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys are the same as the regular current rates charged for their services in standard non-class matters, including contingent and non-contingent matters. The attorneys have substantial experience in complex class action litigation, and their hourly rates are within the range charged by attorneys with comparable experience levels for litigation of a similar nature.

Having found the hourly rates and hours expended reasonable, as of October 21, 2019, the aggregate lodestar calculation is $368,143.50 for the 717.3 hours of attorney and support staff work. Class Counsel's request for $2,266,666.00 (one-third of the settlement amount) will result in Class Counsel receiving approximately 6.16 times the lodestar. Courts frequently approve attorneys' fees awards for amounts in excess of the calculated lodestar. Indeed, multiples ranging from 1 to 8 are often used in common fund cases. *See In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 590 (E.D. Pa. 2005) (approving a 6.96 multiplier); *Steiner v. Am. Broadcasting Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (holding a 6.85 multiplier "falls well within the range of multipliers that courts have allowed"); *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014) ("Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."). Such multipliers are necessary to compensate counsel for the risk of assuming the representation on a contingency fee basis. *City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974). Moreover, Class Counsel is expected to perform additional work in connection with this case following this Court's approval. As such, the multiplier will likely be lower by the time the matter is closed and Class Counsel's work is complete.

Therefore, having considered the relevant *Gunter/Prudential* factors and performed the lodestar cross-check, this Court approves the reasonable amount of attorneys' fees requested.

### *Reimbursed Litigation and Administrative Expenses*

Class Counsel also seeks approval of the portion of the Fee Agreement which entitles them to reimbursement of their litigation and administrative expenses. Courts recognize that "'[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund.'" *In re Corel*

*Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (quoting *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000)).  This includes reimbursement for settlement administration.  *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 225 (E.D. Pa. 2014).

Class Counsel claims that they incurred $60,170.97 in such expenses during the pendency of this litigation.  This amount includes:  (1) $24,936 for the Settlement Administrator, who was/is responsible for the administration of the class notice, claims review, and payment distribution services; (2) $2,500 for the Escrow Agent, who was/is responsible for handling the $6.8 million settlement fund; and (3) $15,000 for the Independent Fiduciary, who evaluated the overall fairness of the settlement, including fee awards.  After carefully reviewing the documentation supporting the reimbursement request, this Court finds that the litigation and administrative expenses listed by Class Counsel are reasonable and expected in this type of case.  Therefore, Class Counsel's request to be reimbursed $60,170.97 in expenses is granted.

### Service Award

Class Counsel also seek this Court's approval of a Service Award, in the amount of $20,000.00, to Plaintiff Gordon Stevens, for his willingness to undertake the risks and the burden as a class representative in this litigation.  "Incentive awards are not uncommon in class action litigation[.]"  *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000).  These payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation[.]"  *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (internal citations and quotations omitted).  Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws."  *Id.* (quoting *In re Cendant*, 232 F. Supp. 2d at 344).

This Court recognizes that there would be no benefit to the Settlement Class Members if Plaintiff had not stepped forward and prosecuted this matter to the current resolution. In doing so, Mr. Stevens devoted time and energy to the litigation, including assisting Class Counsel with discovery and mediation. The requested award is well within the range of awards made in similar cases. *See, e.g., Barel v. Bank of America*, 255 F.R.D. 393, 402-03 (E.D. Pa. Jan. 16, 2009) (awarding $10,000.00 incentive award); *Brown v. Progressions Behavioral Health Servs., Inc.*, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (awarding $10,000 to each named plaintiff because they "were actively involved in the litigation since before it was commenced, they provided the information and documents that formed the basis for the lawsuit" and "the service award payments represent a small fraction of the $452,586 Settlement Fund."). Settlement Class Members were also notified that Class Counsel would request this individual award for Mr. Stevens. Notably, no Settlement Class Member objected to the proposed Service Award. Accordingly, this Court approves the requested award of $10,000.00 to Plaintiff Gordon Stevens.

**CONCLUSION**

For the reasons stated herein, this Court grants final approval of the proposed class action settlement, awards Class Counsel reasonable attorneys' fees in the amount of $2,266,666.00 and the reimbursement of litigation and administrative expenses in the amount of $60,170.97, and awards the sum of $10,000.00 to the Class Representative, Gordon Stevens. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J*